19-2474-cv
*Critcher, et al v. L'Oreal USA, Inc.*

# In the
# United States Court of Appeals
## for the Second Circuit

AUGUST TERM 2019

No. 19-2474-cv

MARY TULLIE CRITCHER, TWOANA CLARK-SHEPPARD, VICTORIA
MARYNOVSKY, PATRICIA BELBOT, JESSICA PETRIE, LINDA FEIGES, SARAH
MCQUEARY, GEORGETTE C. FOURNIER, INDIVIDUALLY AND ON BEHALF
OF OTHER SIMILARLY SITUATED PERSONS,
*Plaintiffs-Appellants*

v.

L'OREAL USA, INC.,
*Defendant-Appellee,*

ATC ASSOCIATES, INC., ATC GROUP SERVICES, LLC,
*Defendant.*

On Appeal from the United States District Court
for the Southern District of New York

SUBMITTED: APRIL 3, 2020
DECIDED: MAY 11, 2020

Before: KEARSE, CABRANES, and PARK, *Circuit Judges*.

———————

The question presented is whether the state-law claims at issue in this action are completely preempted by federal law, in particular, the federal Food Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA").

Defendant L'Oréal USA, Inc. is a major producer of beauty products. Plaintiffs are former consumers of some of those products, specifically a few "liquid cosmetics" like L'Oréal Visible Lift Serum Absolute and L'Oréal Age Perfect Eye Renewal Eye Cream.

Plaintiffs brought this action because a portion of each of the liquid cosmetics they purchased could not be extracted. Unable to retrieve the full product—and believing that they were deceived into buying more of the cosmetics than they could use—they sought relief in the United States District Court for the Southern District of New York (John G. Koeltl, *Judge*). They brought several common-law claims against L'Oréal—for unjust enrichment and breach of the implied warranty of merchantability—in addition to claims under eight state consumer-protection statutes.

Like the District Court, we hold that Plaintiffs' state-law claims are, in fact, preempted by the FDCA. Accordingly, we conclude, on that ground alone, that Plaintiffs' claims were correctly dismissed by the District Court and **AFFIRM** its judgment of July 12, 2019.

Laurence D. King, Matthew B. George, Kaplan Fox & Kilsheimer LLP, San Francisco, CA, *for Plaintiffs-Appellants.*

Peter George Siachos, Gordon, Rees, Scully, Mansukhani, LLP, New York, NY, *for Defendant-Appellee.*

JOSÉ A. CABRANES, *Circuit Judge*:

The question presented is whether the state-law claims at issue in this action are completely preempted by federal law, in particular, the federal Food Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA").

Defendant L'Oréal USA, Inc. ("L'Oréal") is a major producer of beauty products. Plaintiffs are former consumers of some of those products, specifically a few "liquid cosmetics" like L'Oréal Visible Lift Serum Absolute and L'Oréal Age Perfect Eye Renewal Eye Cream.

Plaintiffs did not bring this suit because they take issue with the effectiveness of such products. Rather, they bring this suit for another reason: because the creams are not fully accessible.

Try as they may, Plaintiffs state that a portion of each of the creams cannot be extracted from their respective containers. Unable to retrieve the full product—and believing that they were deceived into

buying more of the cosmetics than they could use—they sought relief in the United States District Court for the Southern District of New York (John G. Koeltl, *Judge*). They brought several common-law claims against L'Oréal—for unjust enrichment and breach of the implied warranty of merchantability—in addition to claims under eight state consumer-protection statutes.

We hold that each of these claims is preempted by the FDCA. Accordingly, we conclude, on that ground alone, that the claims were correctly dismissed by the District Court and thus **AFFIRM** its judgment of July 12, 2019.

## I. BACKGROUND[1]

Mary Tullie Critcher, one of the Plaintiffs, alleges that she purchased L'Oréal's Visible Lift Serum Absolute in June 2016, paying approximately $13 for it. She was able to extract some of the Lift Serum cream just fine. But she soon found that she was "unable to use all of [the product] . . . because it could not be completely dispensed from its container."[2] This left her—to quote a customer complaint she posted on L'Oréal's website—"[v]ery disappointed!!"[3] Alleging that she

---

[1] Because we are "considering [L'Oréal's] preemption argument in the context of a motion to dismiss," we view "the factual allegations relevant to preemption . . . in the light most favorable to the plaintiff[s]." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 444 (2d Cir. 2015).

[2] Second Amended Complaint ("SAC") ¶ 48.

[3] *Id.* at ¶ 49.

simply thought this first container was "a lemon[,]" she went out again to buy another package of the Visible Lift Serum Absolute.[4] But the results were no better: "[t]he second bottle also stopped dispensing[,] leaving a significant amount of product stranded."[5]

Stories similar to Critcher's inform the allegations of several other consumers—including Twoana Clark-Sheppard, Victoria Marynovsky, Patricia Belbot, Jessica Petrie, Linda Feiges, Sarah McQueary, and Georgette C. Fournier—each of whom claims to have purchased the Lift Serum or some similar L'Oréal product only to find that much of the product was not retrievable through conventional means. Together they brought this putative class action in the District Court, claiming that L'Oréal—in selling at least four of its "liquid cosmetics"[6]—violated the New York Consumer Protection Statute (N.Y. Gen. Bus. Law §§ 349-50), the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201, *et seq.*), the Kansas Consumer Protection Act (K.S.A. § 50-623, *et seq.*), the Missouri Merchandising Practices Act (Mo. Rev. Stat. § 407.010, *et seq.*), the Texas Deceptive Trade Practices Act (Tex. Bus. & Com. Code § 17.41, *et seq.*), the Nevada Deceptive Trade Practices Act (Nev. Rev. Stat. § 598.0915 *et seq.* and §

---

[4] *Id.* at ¶ 50.

[5] *Id.*

[6] The four cosmetics that are named in the complaint are the L'Oréal Visible Lift Serum Absolute Foundation, L'Oréal Age Perfect Eye Renewal Cream, L'Oréal Revitalift Bright Reveal Brightening Day Moisturizer, and Maybelline Superstay Better Skin Skin-Transforming Foundation. Plaintiffs allege purchasing only the Visible Lift Serum Absolute and the Age Perfect Eye Renewal Cream.

41.600(1)), the Maryland Consumer Protection Act (Md. Code Ann. § 13-101, *et seq.*), and the Michigan Consumer Protection Act (Mich. Comp. Laws Ann. § 445.901, *et seq.*). They also claimed that L'Oréal was unjustly enriched and violated the implied warranty of merchantability in selling the products at issue. They sought, under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), among other things, damages, restitution, injunctive relief, and a declaration under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*

L'Oréal moved to dismiss the complaint, contending, among other things, that the claims alleged were preempted by the federal law governing cosmetics. In a memorandum and order from July 11, 2019, the District Court agreed.[7] It concluded, in the first place, that the FDCA, which comprehensively regulates cosmetics and contains a broad preemption provision, preempts all of Plaintiffs' state-law claims.[8] The District Court concluded in the alternative that the Fair Packaging Labeling Act, 15 U.S.C. § 1451, *et seq.* ("FPLA"), preempts the state-law claims as well, and that, even if neither preemption provision applied, the claims could not survive because no "reasonable consumer" could have been deceived by L'Oréal's products.[9]

---

[7] *Critcher v. L'Oreal USA, Inc.*, No. 18-cv-5639 (JGK), 2019 WL 3066394 (S.D.N.Y. July 11, 2019).

[8] *Id*. at *2-4.

[9] *Id*. at *4-5.

Plaintiffs appealed the District Court's dismissal of their complaint. Because we conclude that the first basis on which the District Court dismissed the complaint is correct (*i.e.*, FDCA preemption), we need not reach either of the alternative grounds for dismissal (*i.e.*, FPLA preemption or application of the "reasonable consumer" standard).

## II. DISCUSSION

### A. *Standard of Review*

"We review *de novo* a district court's application of preemption principles."[10] Because "the existence of preemption turns on Congress's intent, we are to begin as we do in any exercise of statutory construction, with the text of the provision in question"[11]: in this case, the text of the FDCA.

### B. *The FDCA*

In enacting the FDCA in 1938, Congress set out to provide some national uniformity to the manufacture and sale of cosmetics—including skin creams—which until that point had been regulated

---

[10] *New York SMSA Ltd. v. Town of Clarkstown*, 612 F.3d 97, 103 (2d Cir. 2010).

[11] *In re WTC Disaster Site*, 414 F.3d 352, 371 (2d Cir. 2005) (internal alterations and quotation marks omitted).

exclusively by the various laws of the states.[12] The FDCA established a comprehensive regulatory scheme governing, among other things, the ingredients, packaging, and marketing of cosmetic products.

The statute also governed the labeling of cosmetics. According to the FDCA, cosmetics must follow particular labeling protocols and may be deemed "misbranded" for several reasons, among them: if the "labeling is false or misleading in any particular,"[13] or if the label does not contain "an accurate statement of the quantity of the contents in terms of weight, measure, or numerical count."[14]

The FDCA further empowered the newly-created Food and Drug Administration ("FDA") to prescribe more specific labeling requirements consistent with the statute, which it has done over time.[15] Among the rules promulgated by the FDA are those requiring cosmetic manufacturers to display "a declaration of the net quantity of contents" which "shall be expressed . . . in terms of fluid measure if the cosmetic is liquid or in terms of weight if the cosmetic is solid, semisolid, or viscous."[16] Other rules specify where the declaration of

---

[12] S. Comm. on Commerce, S. REP. NO. 75-91, 5 (1937); *see also* Amalia K. Corby-Edwards, Cong. Research Serv., R42594, *FDA Regulation of Cosmetics and Personal Care Products*, 5 (2012).

[13] 21 U.S.C. § 362(a).

[14] *Id*. § 362(b).

[15] *Id*. § 371(a).

[16] 21 C.F.R. § 701.13(a).

the net quantity of contents should be placed on the label,[17] in what typeface it should be displayed,[18] and in what units of measurement it should be calculated.[19]

In order to ensure that these various federal requirements are not obstructed by state law, in 1997, Congress added to the FDCA an expansive preemption provision covering cosmetics.[20] That provision stipulates that:

> no State or political subdivision of a State may establish or continue in effect any requirement for labeling or packaging of a cosmetic that is different from or in addition to, or that is otherwise not identical with, a requirement specifically applicable to a particular cosmetic or class of cosmetics under this chapter, the Poison Prevention Packaging Act of 1970 (15 U.S.C. 1471 *et seq.*), or the Fair Packaging and Labeling Act (15 U.S.C. 1451 *et seq.*).[21]

In other words, the FDCA preempts not only those state laws that are in conflict with it (*i.e.*, any law that is "different from" the FDCA), but

---

[17] *Id.* § 701.13(e).

[18] *Id.* § 701.13(h).

[19] *Id.* § 701.13(j)-(p).

[20] Food and Drug Administration Modernization Act of 1997, Pub. L. No. 105-115, § 752, 111 Stat. 2296, 2376.

[21] 21 U.S.C. § 379s(a).

also *any* state law that provides for labeling requirements that are not *exactly the same* as those set forth in the FDCA and its regulations (*i.e.*, any law that is "in addition to" the FDCA).

In turning to Plaintiffs' complaint, we must determine if any of the state-law claims it asserts—whether based in statute or common law—imposes a labeling requirement that is "different from" or "in addition to" those provided by the FDCA.

## C. *Plaintiffs' Complaint*

Throughout their complaint, Plaintiffs allege that their injuries resulted from the fact that the labels of the various L'Oréal products omitted certain critical information—specifically, that the creams could not be fully dispensed from their respective containers. Absent such information, Plaintiffs contend, the products were misbranded in violation of 21 U.S.C. § 362(a). They assert that any consumer would need to have known that some product gets stuck in order to make a reasonably informed purchase; because that information was missing, no reasonably informed purchase could be made.

In sum, Plaintiffs state that, "[t]he quantity of Liquid Cosmetic Product claimed by Defendant on the various packages is deceptive and misleading because while the containers accurately state the total amount of product contained therein, Defendant fails to disclose to consumers that they will not be able to access or use a large

10

percentage—in some cases more than half—of the product purchased."[22]

Plaintiffs' statutory and common-law claims are predicated on this theory of liability.

To see whether those claims are preempted, we must consider what this particular theory of liability implies. Note that Plaintiffs admit that L'Oréal's packages comply with federal labeling requirements. Those packages, they concede, do "accurately state the total amount or product contained therein," as is mandated by the FDCA and the regulations promulgated thereunder.[23]

But Plaintiffs then argue that mere compliance with that net-quantity disclosure requirement is not enough because it allegedly has the effect of making the packaging misleading: a consumer will think that the amount identified on the label is the amount that is accessible. Therefore, Plaintiffs assert that compliance with one part of the FDCA and its regulations counterintuitively results in a violation of another part of the FDCA.

In order for L'Oréal—or any similarly situated cosmetic producer—to avoid liability under Plaintiffs' theory, then, L'Oréal must make an additional disclosure on its packaging, indicating that

---

[22] SAC ¶ 7 (emphasis omitted).

[23] *Id.*

11

some cream cannot be retrieved or that the cream that is accessible is less than the net quantity displayed on the package label.

Does this theory survive the FDCA preemption clause?

We conclude that it does not. If Plaintiffs were permitted to move forward with their claims, they would be using state law to impose labeling requirements on top of those already mandated in the FDCA and the regulations promulgated thereunder. These would be requirements "different from" or "in addition to"—or otherwise "not identical with"—those requirements that federal law already imposes. This is exactly what the FDCA does not permit. Congress or the FDA could have chosen to mandate such additional labeling when they established the comprehensive regulatory regime governing cosmetics, but they did not. And because of the broad preemption provision that Congress *did* choose to include, Plaintiffs cannot now seek to impose those requirements through alternative means grounded in state law.

In so holding, we draw on similar conclusions already reached by district courts in this Circuit and elsewhere.[24] As one of those

---

[24] *See Crozier v. Johnson & Johnson Consumer Companies, Inc.*, 901 F. Supp. 2d 494, 504 (D.N.J. 2012) (noting, in the related context of drug regulation, that "FDA regulations cover the entire label [of the drug], including indications of a product's brand name, and thus preempt challenges to a label, even if the challenge is not based on inaccuracy or incompleteness"); *see also O'Connor v. Henkel Corp.*, No. 14-cv-5547 (ARR/MDG), 2015 WL 5922183, at *5 (E.D.N.Y. Sept. 22, 2015) (noting that "plaintiffs can escape the preemptive force of the FDCA only if their claims seek to impose requirements that (1) are identical to those imposed by the FDCA, or (2) are

district courts noted in an analogous case dealing with deodorant containers that the plaintiffs alleged were underfilled, the "FDA can and does impose additional labeling requirements when the standard net weight declaration leaves consumers with insufficient, misleading, or inaccurate information"—requirements that the FDA imposes in the area of food packaging.[25] "Yet the FDA has declined to do so for the category of products at issue here"—namely, cosmetics.[26] Therefore, that court concluded that "[b]ecause federal law does not impose an obligation to include supplemental statements regarding usable net weight, preemption bars these claims."[27]

We also draw on the conclusion reached by one of our sister Circuits in the related context of FDCA-food regulation, for which the FDCA contains a similar preemption provision that blocks state-law claims unless the requirements of the state law are "identical" to those that federal law imposes.[28] In that case, the Seventh Circuit noted that even when additional "disclaimers [on a product's packaging] would be a good thing" for the consumer, as long as those additional-disclaimer requirements are "not identical to the labeling

---

outside the scope of the relevant federal requirements"); *Bimont v. Unilever U.S., Inc.*, No. 14-cv-7749 (JPO), 2015 WL 5256988 (S.D.N.Y. Sept. 9, 2015).

[25] *O'Connor*, 2015 WL 5922183, at *6.

[26] *Id.*

[27] *Id.*

[28] 21 U.S.C. § 343-1.

13

requirements imposed on such products by federal law, . . . they are barred."[29]

Plaintiffs try to rescue their claims from preemption in several ways, each of which we find unavailing.

1.

Among their arguments, Plaintiffs contend that the state laws implicated by their claims would merely impose labeling requirements consistent with those already in the FDCA—that is, not "different from" or "in addition to" the FDCA requirements.[30] Specifically, Plaintiffs argue that these state laws enforce the general FDCA requirements of (1) 21 U.S.C. § 362(a) that labels not be "false and misleading in any particular" and (2) 21 U.S.C. § 362(d) that containers not be "formed, or filled to be misleading." Putting aside for now the fact that they did not invoke 21 U.S.C. § 362(d) in their complaint, we conclude that neither general requirement can be read to impose the particular labeling additions that Plaintiffs seek here.

---

[29] *Turek v. General Mills, Inc.*, 662 F.3d 423, 427 (7th Cir. 2011).

[30] Later in their brief, Plaintiffs also argue the exact opposite as a ground for avoiding preemption. They argue that their state-law claims, far from enforcing the terms of the FDCA, are in fact *outside* the scope of the FDCA. To justify this argument, Plaintiffs assert that their claims focus on the products' defective dispensers, not on the products' labels, and thus involve a subject matter that is beyond the federal statute's purview and preemptive force. We address this product-defect theory of liability in the next section below.

As already noted, the FDA has promulgated rules regulating what must be included on labels. The regulations have therefore stated, with specificity, what information is necessary to avoid misleading consumers—such as, the net quantity of the product in a container. In light of the technical nature of such requirements—combined with Congress's broad, categorical statement of preemption in the FDCA—we are reluctant to conclude that states may impose *other* labeling requirements that have not been imposed by Congress or the FDA. If we were to impose such *additional* labeling requirements, we would be construing state law to impose many "requirements" that are not contained in the federal statute, or in the regulations issued thereunder, and to disrupt what Congress intended to be a uniform—and federally-led—regulatory scheme.

## 2.

Plaintiffs also contend that the crux of their complaint was not only that L'Oréal's labels were misleading, but also that its containers were defective. But, in fact, Plaintiffs did not make this product-defect theory clear in their complaint or before the District Court (failing to invoke 21 U.S.C. § 362(d), for example). Rather, Plaintiffs continually invoked 21 U.S.C. § 362(a) and repeatedly noted that they were aggrieved because L'Oréal's "labels are misbranded in violation of the FDCA's requirements that such labeling not be 'false or misleading in any particular.'"[31]

---

[31] SAC ¶ 107 (quoting 21 U.S.C. § 362(a)).

Section 362(a) was the specific FDCA provision that they sought to enforce through their state-law claims, noting that it was because of what they saw as L'Oréal's "material misrepresentations and omissions on its misbranded products" that they, as "reasonable consumers" were "misle[d]."[32] As the District Court aptly noted, Plaintiffs' alleged "injury flows directly from the labeling of L'Oréal's products."[33] They cannot replead their case on appeal to be about a product "defect."

In short, Plaintiffs cannot avoid the sweeping preemptive force of the FDCA. Their state-law claims—all of which seek to impose labeling requirements that are additional to, or different from, those that federal law has established—are barred.

### III. CONCLUSION

To summarize, we hold that the FDCA's broad preemption clause, 21 U.S.C. § 379s, bars Plaintiffs from seeking to impose additional or different labeling requirements through their state-law claims, especially when Congress and the FDA already have provided for specific labeling requirements.

For the foregoing reasons, we **AFFIRM** the District Court's July 12, 2019 judgment.

---

[32] *Id*. at ¶ 120.

[33] *Critcher*, 2019 WL 3066394, at *3.

16